# MARK BRADFORD, P.C.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/15/12

299 12th Street
Brooklyn NY 11215-4903
347-413-3287
mb@markbradfordpc.com
www.markbradfordpc.com

By Facsimile (212) 805-6382 (Page 1 of 3)

September 27, 2012

Hon. Victor Marrero, U.S.D.J.
United States District Court for the Southern District of New York
500 Pearl Street, Suite 660
New York, New York 10007

> Re: *Accantia Group Holdings, et al. v. Food Market Merchandising, Inc.*,
> Index No. 12-cv-5042 (VM) (S.D.N.Y.)

Dear Judge Marrero:

We represent defendant Food Market Merchandising, Inc. ("**FMMI**"), in the above-referenced litigation. Pursuant to the order of this Court at the telephone conference with the parties on September 20, 2012, we are writing to explain why transferring this action, pursuant to 28 U.S.C. § 1404(a), to the District of Minnesota ("**D. Minn.**"), where FMMI and all relevant evidence and witnesses are located, would best serve the interests of justice.

Plaintiffs (collectively, "**Unilever**") allege that FMMI's Simply® mark infringes on Unilever's Simple® mark. Unilever's complaint asserts six claims under the Lanham Act and state unfair competition law. Unilever's only basis for jurisdiction and venue is that allegedly infringing products were sold in New York, although FMMI – which is located and operates entirely in Minnesota – sells its Simply® branded products nationwide. When venue is theoretically proper in multiple districts, district courts have broad discretion to transfer civil actions "to any other district or division where it might have been brought" "[f]or the convenience of parties and witnesses, in the interests of justice." 28 U.S.C. § 1404(a). The burden is on the movant to demonstrate that those circumstances favor the proposed venue. *See id.* at 395 ("The moving party must 'make a clear-cut showing that transfer is in the best interests of the litigation.'").). The following factors guide that discretion: "(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice based on the totality of the circumstances." *See Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 441 (S.D.N.Y. 2003); *Ayala-Branch v. Tad Telecom, Inc.*, 197 F. Supp. 2d 13, 15 (S.D.N.Y. 2002). The most important factors in this case are as follows:

(1) The Convenience of Witnesses

"Courts generally view the convenience of witnesses as the single most important factor in the balance." *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175, 183 (S.D.N.Y. 1995); *800-Flowers, Inc. v. Intercont'l Florist, Inc.*, 860 F. Supp. 128, 134 (S.D.N.Y. 1994) ("The location of witnesses and physical evidence is a major factor to be considered when evaluating a transfer motion."). All of FMMI's material witnesses live and work in Minnesota:

Hon. Victor Marrero, U.S.D.J.                                                                                          Page 2
September 27, 2012

- **Paul Henson**, FMMI's VP-Marketing, and **Jon Tollefson**, FMMI's CEO, will testify to numerous matters including, but not limited to, the ownership and control of FMMI's mark, its development, due diligence, prosecution of the mark, its use in commerce; and FMMI's marketing and sales of appurtenant goods; the extent of FMMI's use of the Simply mark and its market saturation, including facts related to FMMI's revenue from appurtenant goods by market and specifically including FMMI's revenue from such goods in the State of and Southern District of New York;

- **Aaron Bible**, FMMI's Controller, will testify regarding FMMI's revenue and sales related to products bearing the Simply mark;

- **Leo Winkleman**, FMMI's in-house designer, will testify regarding the design and development of the Simply mark;

- FMMI's sales team of eight employees all located in Minnesota, can testify regarding sales of relevant products and knowledge of any confusion related to Unilever's products bearing the Simple mark.

- Additionally, the relevant non-party witnesses are located in or near Minnesota. In addition to Mr. Winkleman, FMMI employed a freelance artist located in Minnesota for design and development of the Simply mark. Further, FMMI works with two vendors in regards to packaging related to the Simple mark—one in Minnesota and one in Iowa.

(2) The Location of Relevant Documents and Relative Ease of Access to Sources of Proof

In addition to the witnesses necessary to litigate this action, the relevant documents, sources of proof, and facts related to FMMI's mark are all located in Minnesota. Other than the Iowa vendor noted above, FMMI's entire operation is located in Minnesota and, as a result, all evidence related to the design, development, ownership, control, use, marketing, and sale of FMMI's Simply products is located in D. Minn.

(3) The Convenience of the Parties; and (6) The Relative Means of the Parties

The convenience and relative means of the parties significantly favors transferring venue. FMMI's entire operation is located in Minnesota, and its resources and business travel are dwarfed by those of Unilever, a U.K.-based conglomerate with operations around the world. Unilever's corporate website shows the breadth of its global operations and states that Unilever's Simple® marks at issue in this case were part of a $3.7 billion transaction. Simply stated, Unilever has the resources to fully and fairly litigate this case on the merits in any jurisdiction, whereas doing so in New York would place an undue burden upon FMMI. *See, e.g., Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459, 468 (S.D.N.Y. 2002) ("[I]t appears that Plaintiff's resources are significantly greater than those of Defendants and that litigation in this District would likely pose a much greater burden on Defendants, given the extensive travel likely to be involved, than the burden posed on Plaintiff to litigate in Nebraska. This factor therefore weighs in favor of Defendants.")

(4) The Locus of the Operative Facts

"Courts in this District have found that the operative facts in infringement cases usually concern 'the design, development and production'" of an allegedly infringing product. *Kwik*

*Goal, Ltd. v. Youth Sports Pub. Inc.*, 2006 U.S. Dist. LEXIS 34460, at *8 (S.D.N.Y. May 31, 2006) (citing *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 530 (S.D.N.Y. 2004)). FMMI sells its products nationwide. Documented sales of Simply® products in the State of New York since December 2010 total $9,794.86, while FMMI's total sales nationwide in that period total approximately $23 million. The mere sale of a little over 0.04% of FMMI's products in this state is nowhere near sufficient to bring the "locus of operative facts" into this district. *See id.*, 2006 U.S. Dist. LEXIS 34460, at *8-*9; *see also Carrie Forbes, Inc. v. The Gap, Inc.*, 1994 U.S. Dist. LEXIS 17613, (S.D.N.Y. Dec. 8, 1994) (transferring trademark infringement, unfair competition, and copyright case to district where defendant designed, created, manufactured, merchandised, and sold the allegedly infringing product, where defendant's relevant employees and documents, and third-party witnesses, were located in transferee district).

### (8) The Weight Accorded the Plaintiff[s'] Choice of Forum

Although "[a] plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant," the emphasis placed by a court on this choice diminishes where "the operative facts upon which the litigation is brought bear little material connection to the chosen forum." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). Here, one plaintiff is the U.K. parent company of its co-plaintiff, which is incorporated in New York and located in New Jersey. Insofar as "apart from some sales of the allegedly infringing products none of the operative facts in this case occurred in New York," and in light of the factors enumerated above, plaintiffs' choice of forum should be given little weight here. *See Herbert Ltd. Partnership v. Electronic Arts Inc.*, 325 F. Supp. 2d 282, 291 (S.D.N.Y. 2004)

### (9) Trial Efficiency and the Interests of Justice, Based on the Totality of Circumstances

In sum, the circumstances here are on all fours with this Court's analysis in *Herbert*, 325 F. Supp. 2d at 292, where transfer was granted in light of "two factors," in particular: (1) "more witnesses with more material information reside in [the transferee forum]; and (2) "the bulk of the material operative facts pertaining to the parties' relationships, transactions and product development at issue in this case occurred in [the transferee forum] and except for sales of the allegedly infringing products — which also occurred in virtually every judicial district in this country — none of the operative facts occurred in New York."

We respectfully request that this Court issue an order transferring this action to D. Minn., pursuant to 28 U.S.C. § 1404(a). We thank the Court for its time and consideration of this matter.

Sincerely,

Mark Bradford

cc:   All Counsel (by email)

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by defendant.

SO ORDERED.

10-12-12
DATE        VICTOR MARRERO, U.S.D.J.